# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**RIO GRANDE COMMUNITY HEALTH CENTER, et al.**,

   Plaintiffs,

   v.

**ROSA PEREZ-PERDOMO, SECRETARY, DEPARTMENT OF HEALTH**,

   Defendants.

**CIVIL NO. 03-1640 (JAG/GAG)**

## REPORT AND RECOMMENDATION

On February 14, 2005, the First Circuit Court issued an opinion affirming the Court's preliminary injunction in the case at bar. Río Grande Community Health Center, Inc. v. Rullan, 397 F. 3d. 56 (1ST Cir. 2005). In accordance, the Court issued an order on March 7, 2005 ordering the defendant to produce a new set of data based on the formula outlined in the First Circuit's order. (Docket No. 115). The controversy at hand relates to the defendant's motion in compliance with said order. (Docket No. 120). Plaintiff Concilio de Salud Integral de Loíza, Inc. ("Loíza") alleges that the defendant has failed to comply with the Court order, and that she is misapplying the formula. *Plaintiff's Opposition to Motion in Compliance*, p. 3 (Docket No. 125). Defendant counters by claiming that she, in fact, has fully complied with the Court's order, and denying that any payment to plaintiff Belaval is warranted. The defendant goes on to assert that she has properly applied the formula, and that the Court should grant an "unrestricted audit" on the plaintiffs in order to confirm the facts and figures presented. *Reply to Plaintiff's Opposition*, p. 2-6 (Docket No. 141).

## LEGAL ANALYSIS

A. *42 U.S.C. § 1396a (bb)(5)(A)*

Various controversies have arisen between the parties as to the proper variables to be used in the equation. First, the parties offer varying interpretations of 42 U.S.C. § 1396a (bb)(5)(A), which, in cases where the Federal Qualified Health Center ("FQHC") furnishes services pursuant to a contract with a managed care entity, calls for the State to pay the center the difference between

**CIVIL NO. 03-1640 (JAG/GAG)**                    2

the total reasonable costs for the year in question and that amount which "exceeds the amount of the payments provided under the contract" with said managed care entity. The defendant claims that the phrase "payments provided under the contract" refers to the payment terms agreed upon, for which the total amount of capitation *owed* to Loíza by its Health Management Organization ("HMO") must be deducted from the total reasonable costs total for the period under review. *Motion in Complaince*, p. 3 (Docket No. 120). However, Loíza alleges that the "payments provided" language actually refers to the real amount *payed* by the HMO to the FQHC. As a result, Loíza alleges, the amount to be deducted must be that of the actual amount payed to it by the HMO, not the total amount owed, the totality of which has not been satisfied. *Plaintiff's Opposition to Motion in Compliance*, p. 3 (Docket No. 125).

In essence, the controversy boils down to the interpretation of the word "*provided*" in the referenced statute. As noted, defendant claims that the term is used to reference the terms of the agreement, whether or not they have been satisfied. On the other hand, Loíza interprets the term as meaning the funds actually disbursed in favor of the FQHC. The interpretation is of great importance to the case at bar considering the more than one million dollar discrepancy between the total amount purportedly owed by the HMO to Loíza ($2,496,535.00)[1] and that which it has already payed out ($1,377,425.70),[2] particularly considering that the wraparound payment owed by the State is determined by subtracting the correct amount from the FQHC's total reasonable costs for the year in question. 42 U.S.C. § 1396a (bb)(5)(A).

As "words are the usual starting point in interpretation," the Court first looks into the meaning of the term "provided" for insight. United States v. Hoyt Cinemas Corp., 380 F. 3d. 558, 566 (1ST Cir. 2004). To that effect, the Court finds that the definition of "provide" lends itself to both interpretations, as it is defined as "to supply or make available" and/or "to have as a condition." *Merriam-Webster's Collegiate Dictionary*, p. 1001 (11TH Ed. 2003). Consequently, the Court must

---

[1] See *Motion in Compliance*, p. 3-4 (Docket No. 120).

[2] See *Plaintiff's Opposition to Motion in Compliance*, p. 3 (Docket No. 125).

**CIVIL NO. 03-1640 (JAG/GAG)**              3

go beyond the mere "application of syntactic and semantic rules," and take into account the goals and underlying policies of the statute as a whole. In re BankVest Capital Corp., 360 F. 3d. 291, 297 n. 11 (1ST Cir. 2004) (citing Cablevision of Boston, Inc. v. Pub. Improvement Commission, 184 F. 3d. 88, 101 (1ST Cir. 1999)); Hoyt Cinemas, 380 F. 3d at 566.

As recognized by the First Circuit, Loíza operates a "community health center" which, by definition, provides primary health and other services to a medically underserved population. 42 U.S.C. § 254b (a); Río Grande, 397 F. 3d. at 60. A cursory review of the statute's legislative history reflects Congress' reverence of the important role such centers play in providing adequate health services to varying populations. SEN. Rep. No. 104-186, *reprinted in* 1996 U.S.C.C.A.N. 4129-4155. The importance of centers such as Loíza is augmented by the fact that their availabity as FQHCs is a federal requirement in order for states[3] to partake in the Medicaid framework. 42 U.S.C. § 1396 (A)(10)(A). The reimbursement provision under review is a reflection of the "important public health role that these centers play." Río Grande, 397 F. 3d. at 61.

It is with the preceding in mind that the Court finds that the interpretation of 42 U.S.C. § 1396a (bb)(5)(A)'s "payment provided under the contract" language should be consonant with the importance given to community health centers, such as Loíza, by Congress. The Court's duty to do so is intensified in a case such as the one at bar where the Commonwealth of Puerto Rico has not complied with its statutory duty to provide wraparound payments to Loíza. Id. Consequently, the Court finds that the wraparound payments called for by 42 U.S.C. § 1396a (bb)(5)(A) include any amount due by the HMO to the FQHC. As a result, the total wraparound owed by the Commonwealth to Loíza should be composed of the difference between the total reasonable costs and the amount actually payed by the HMO to the FQHC.

B. *Payments Made in Federal and State Proceedings*

The defendant next alleges that the payments made in the state court proceeding in favor of Loíza should also be considered when calculating the total amount of wraparound payment satisfied.

---

[3] Puerto Rico is considered a state for Medicaid purposes. 42 U.S.C. § 1301 (a)(1).

**CIVIL NO. 03-1640 (JAG/GAG)**                    4

To that effect, defendant alleges that besides the funds deposited before the Court, totaling $1,337,425.70 (Docket Nos. 58 and 93), the $776,626.00 deposited in the state court case should also be credited to the wraparound payment due in the case at bar. *Defendant's Reply Brief*, p. 9 (Docket No. 141). However, as noted by the First Circuit, the claims set forth in the parallel state and federal proceedings vary inasmuch as the case at bar does not seek retroactive relief, focusing on the wraparound payments due subsequent to the filing of the complaint. Río Grande, 397 F. 3d. at 65. The state court complaint, originally filed by nineteen FQHC's, sought relief dating back to 2001, when the Commonwealth's duty to make payments pursuant to the PPS began. Id., p. 64. Hence, the monies deposited in the state court proceedings bear no relationship to the wraparound payments claimed in the captioned case, and, as a result, should not be credited to the defendant for purposes of the claims brought before the Court.

C. *Proposed Cost Audit*

In her reply brief, defendant questions Loíza's proposed cost per visit of $120.17. *Defendant's Reply Brief*, p. 5 (Docket No. 141). To that effect, defendant proposes that the true amount should be one provided by a National Association of Community Health Center ("NACHC") studies, which is $66.89. Id., p. 5-6. Additionally, defendant proposes that the Court allow her to perform "an unrestricted cost audit of plaintiff Loíza" in order to truly determine the reasonable cost per visit. Id., p.6, 8. The plaintiffs counter by alleging that the defendant is precluded from performing said audit by the Single Audit Act inasmuch as an audit was already performed on Loíza's finances for the years 1999 and 2000, and the resulting information was made available to the defendant. *Plaintiffs' Surreply in Opposition*, p. 6-8 (Docket No. 142). Plaintiffs go on to add that defendant has otherwise failed to justify the need for such audit, and that she has misconstrued the information contained in the NACHC's study. Id.

The defendant's request for an unrestricted cost audit should be denied. Defendant's only grounds for challenging Loíza's per-visit cost is that it varies from the amount set forth in a NACHC study. However, defendant failed to submit a copy of such study along with her reply brief. (Docket No. 141). In fact, no documentary evidence whatsoever has been filed in support of her contention

**CIVIL NO. 03-1640 (JAG/GAG)**              5

that Loíza's cost per visit estimate, which she originally used in her motion in compliance (Docket No. 120), is unreasonable. Hence, the Court finds that Defendant's unsupported assertions and characterizations of the NACHC are insufficient to warrant the requested audit, which would further delay wraparound payment. Consequently, the Defendant's request for an unrestricted cost audit of Loíza's finances must be denied.

*D. Belaval*

Two issues as to plaintiff Belaval have been set forth. First, the Court must consider whether Belaval complied with the December 22, 2004 order to show cause. (Docket No. 97). Second, the Court must determine if the March 7, 2005 order which prompted the controversy at bar requires defendant to pay Belaval.

As to the first issue, the Court concludes that Belaval has been in full compliance with the Court's orders. To that effect, on February 14, 2005, Belaval submitted along with the plaintiffs' renewed motion for contempt a statement of the alleged wraparound payment due. **Exhibit L**, *Motion for Contempt and in Opposition to Defendant's January 25, 2005 Motion* (Docket No. 114). The Court notes that up to that point, defendant had not requested contempt or dismissal for failure to prosecute. Hence, the Court finds any such request untimely, and Belaval in compliance of the Court's order.

Next, the Court must address defendant's contention that the March 7, 2005 order "does not require any payment to Belaval for the 2004 operative year." *Defendant's Reply Brief*, p. 2 (Docket No. 141). In said order, the Court specifically required defendant to establish a provisional payment with regard to Belaval. *March 7, 2005 Order*, p. 2 (Docket No. 115). Until such a system were implemented, the Court ordered the plaintiffs to provide defendant with a good faith cost estimate of the wraparound payment due "at the end of each quarter." Id. The Court went on to outline the procedure that would follow the plaintiffs' initial submission of the wraparound estimate. Id., p. 2-3.

The issue before the Court is not whether wraparound payment for 2004 are generally owed to Belaval, but whether the Court's March 7, 2005 order requires such payment. The Court concludes that it does not inasmuch as the orders and procedures outlined refer to future actions.

**CIVIL NO. 03-1640 (JAG/GAG)**                6

Specifically, (1) "establish[ing] forthwith a provisional payment system," and (2) setting forth a temporary mechanism through which the parties could comply with wraparound payments as they became due. As a result, the Court finds that the Court's order does not require defendant to pay Belaval any amount owed for 2004. Consequently, the Court **RECOMMENDS** that the Court find that defendant has complied with the Court's order with respect to Belaval. However, the Court stresses that its ruling is limited to what is called for by the March 7, 2005 order, not what is actually due. No recommendation to that effect is made herein. In addition, the Court also **RECOMMENDS** that the defendant's request to the effect that Belaval be found in contempt be **DENIED**.

## CONCLUSION

**WHEREFORE**, the Court hereby **RECOMMENDS** that (1) wraparound payment be determined by subtracting the total reasonable costs from the amount actually payed for by the HMO to Loíza; (2) the funds deposited in the state court proceeding not be credited to the amount owed by defendant to Loíza as wraparound payment; (3) that defendant's request for an unrestricted cost audit be denied; (4) that the defendant be found to have complied with the Court's March 7, 2005 order with respect to Belaval; and (5) that defendant's request for contempt against Belaval be denied.

Under the provisions of 28 U.S.C. § 636 and Rule 72 (d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of the Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986); Davet v. Maccorone, 973 F. 2d 22, 30/31 (1st Cir. 1992).

**IT IS SO RECOMMENDED.**

**Date: June 24, 2005**                                              S/ Gustavo A. Gelpí
                                                                              **GUSTAVO A. GELPÍ**
                                                                              **U.S. Magistrate Judge**