UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **Rio Grande Community Health Center, Inc., et al**<br>         **Plaintiffs**<br><br>v.<br><br>**Hon. Ana Ríus Armendáriz, Secretary of the Department of Health of the Commonwealth of Puerto Rico**<br>         **Defendant** | Case No. 03-1640 (GAG)<br>(Consolidated with Case Nos. 06-1291, 06-1524) |

**MOTION REQUESTING RECONSIDERATION OF ORDER AT
ECF DOCUMENT NO. 648**

COMES NOW Defendant through the undersigned attorneys and very respectfully state, allege and pray as follows:

1. This Honorable Court issued an Order requiring the Commonwealth to "on or before Tuesday May 19, 2015 identify and deposit with the Clerk of Court the funds requested by the Department of Health to comply with the court's injunction, which was affirmed on appeal". See, ECF Document No. 648.

2. The Commonwealth does not take lightly the possibility of noncompliance with this Honorable Court's order. Nonetheless, the Commonwealth of Puerto Rico at the present time cannot comply with the referenced order in light of the current fiscal situation.

3. Defendant and the OMB have been actively trying to identify available funds in the current budget to comply with its obligation to issue the quarterly WAP payments, since a budget appropriation of funds for that purpose was not approved by the Commonwealth's Legislature. The funds are not yet available in the current fiscal year.

4. In Morales Feliciano v. Roselló Gonzalez, 124 F. Supp. 2d 774, 785-786, (D.P.R. 2000), the Court recognized that the Government can raise the impossibility of compliance as a defense in a civil complaint. In particular, "Impossibility or inability to comply with a judicial decree is a valid defense to civil contempt charges". Morales Feliciano, supra, citing United States v Bryan, 339 U.S. 323, 330-34, 94 L. Ed. 884, 70 S. Ct. 724 (1950); United States v Rylander, 460 U.S. 752, 757, 103 S. Ct. 1548, 75 L. Ed. 2d 521 (1983); Star Fiancial Services v Aastar, 89 F.3d 5, 13 (1st Cir. 1996). It further states that "[t]he burden of establishing impossibility or inability to comply as a defense to civil contempt is on the party raising the defense. Rylander, 460 U.S. at 752. If inability to comply is to serve as a valid defense to civil contempt, it must be demonstrated clearly and categorically. Morales Feliciano 697 F. Supp. at 35. Such burden is difficult to meet. Fortin v. Com'r of Mass. Dgpt. of Public Welfare, 692 F.2d 790, 796 (1st Cir. 1982); see also United States v. Fleischman, 339 U.S. 349, 362-63, 94 L. Ed. 906, 70 S. Ct. 739 (1950)". Morales Feliciano, supra.

5. In Morales Feliciano, *supra*, the material consideration in the Court's rationale not to grant the government the impossibility of compliance defense was the figure of the claimant. In said case, the civil rights nature of the claims of the individuals was superimposed over those of the Commonwealth. Consequently, the impossibility of

compliance defense ceded to the individual rights. The instant case can be clearly distinguished from Morales Feliciano, since the claimants are corporations (service providers), not the individuals and the nature of the claim is monetary not civil rights. The other consideration in this case is that the claimants have other sources of funding that allow them to provide services to Medicaid patients, such as the MCOs payments.

6. Defendant submits herein the reasons why the Commonwealth at the present time, cannot comply with this Honorable Court's order taking into consideration the Commonwealth's current fiscal situation.

7. The nature of the wrap around payments (WAP) as established by the Medicaid Act under a MCOs model is that WAP constitute **supplemental payments** in addition to the payments made by the MCOs. See, 42 USC §1396a(bb).

> **(bb)** Payment for services provided by Federally-qualified health centers and rural health clinics.
>
> > **(5)** Administration in the case of managed care.
> >
> > > **(A)** In general. In the case of services furnished by a Federally-qualified health center or rural health clinic pursuant to a contract between the center or clinic and a managed care entity (as defined in section 1932(a)(1)(B) [42 USCS § 1396u-2(a)(1)(B)]), the State plan shall provide for payment to the center or clinic by the State of a **supplemental payment equal to the amount (if any) by which the amount determined under paragraphs (2), (3), and (4) of this subsection exceeds the amount of the payments provided under the contract.**

8. It should be noted that the Commonwealth has been complying with the supplemental prospective payments as per the injunction in this case and in compliance with the Medicaid Act for years now. In the past year, and as a result of the

deteriorating fiscal situation of the Commonwealth, defendant has complied with the wrap around payments, even if they have been delayed.

9. In the current fiscal year, the Commonwealth Legislature appropriated the amount of $22 million for the prospective payments in this case, although the budget request was larger and sufficient to cover all quarterly payments. The quarterly payments using the rates established by this Honorable Court were $9,437,469.43 for the second quarter of 2014, $9,864,463.10 for the third quarter of 2014 and $9,457,418.20 for the fourth quarter of 2014. As a consequence of these payments, the budgeted funds were depleted by the second quarter, with little left over for the third quarter. At the current time, and as the Commonwealth has informed plaintiffs consistently, there are no more appropriated funds that the Commonwealth could tap into in order to make the quarterly payments.

10. We hereby attach to this Motion the Commonwealth of Puerto Rico's Financial Information and Operating Data Report dated October 30, 2014 and the Quarterly Report dated May 7, 2015. See **Exhibits 1 and 2**, respectively. These Reports illustrate the current fiscal situation of the Commonwealth of Puerto Rico and the difficulties it faces to meet its financial obligations.

11. From a careful review of the October 30, 2014 (Exhibit 1) and the May 7, 2015 (Exhibit 2), it is evident how the fiscal situation has worsened. These Reports also illustrate that the fiscal situation has worsened over the years and that recent developments has limited the sources of income.

12. It is public knowledge that the Commonwealth is having a fiscal crisis that as a result of insufficient financial liquidity.  The Medicaid Program is at the heart of the financial liquidity problems of the Commonwealth of Puerto Rico.  The cost of the Program for the Commonwealth is around $2.7 billion, the Federal funding for this Program is limited to a 55% **reimbursement** of the funds expended while the Affordable Health Care Act (ACA) funds are available. Once the ACA funds are no longer available, which is estimated to occur on year 2018, the Commonwealth will likely return to a fund of around $353 million for the totality of the Program, which will represent less than a 13% of the cost of the Program to be federally funded.

13. The Quarterly Report dated May 7, 2015, addresses the issue regarding the Health Insurance Administration and its impact by the fiscal situation:

> *Health Insurance Administration Fiscal Situation*
> *The Puerto Rico Health Insurance Administration's ("PRHIA") transition from a third party administrator model to a managed care organization model has exacerbated PRHIA's liquidity needs because, in the latter model, it is customary to pay related premiums during the first days of each month.  This requirement, coupled with the need to fund legacy claims under the Third Party Administrator model, results in a financing need of approximately $150 million.  If PRHIA is unable to secure funding or financing for this financing gap and/or if the Commonwealth's financial situation precludes it from continuing supporting the Commonwealth health insurance plan, PRHIA might be unable to fulfill its financial and contractual obligations.  In order to ensure continuity of services, PRHIA reached a preliminary agreement with the five private insurance providers, whereby PRHIA will be paying throughout the month the premiums owed to the insurers (as opposed to paying the entire amount during the first days of the month).*
>
> *PRHIA is facing other challenges, including a substantial reduction in federal funding (absent Congressional action) in the next few years.  See "FISCAL CONDITION – Financial Condition of Selected Component Units – PRHIA" And "RISK FACTORS – The Commonwealth's healthcare costs represent a very high percentage of its budgetary expenditures, and the Commonwealth may be unable to continue to fund such healthcare costs." Commonwealth of Puerto Rico Quarterly Report Dated May 7, 2015,* See, **Exhibit 2**, **Pages 8-9**

14. At a certain point in time in the past, the quarterly payments were made from a line of credit from the Governmental Development Bank (GDB). At present, this is no longer an option because the GDB is facing its own financial constraints. The Government Development Bank for Puerto Rico Special Liquidity Update dated October 17, 2014, attached as **Exhibit 3**, illustrates the current liquidity problems faced by the GDB and its inability to cover all the shortfalls in the 2014-2015 fiscal year budget.

15. The abovementioned reports describe in depth the current frail fiscal situation of the Commonwealth of Puerto Rico and the projections in the collection of funds for its day to day operations.

16. As a result of the current deficit projections and the degradation of the Commonwealth's bonds, the government simply cannot obtain additional financing to comply with all its financial obligations. In the case at bar, the state of affairs is further complicated by the fact that the Medicaid Program, although a federal program, lacks the sufficient federal funding to allow the Commonwealth to comply with all of its requirements.

> *"The Government projects that it will close fiscal year 2015 with a budget deficit of $191million. This is the result of an estimated revenue shortfall of $651 million that is expected to be partially offset with certain new revenue measures, some of which have already been approved and implemented, estimated to generate approximately $335 million (of which $150 million have already been collected) and $125 million in cuts in budgetary appropriations already implemented by the Office of Management and Budget ("OMB"). Commonwealth of Puerto Rico Quarterly Report Dated May 7, 2015,* **Page 3.**
>
> *GDB, in its role as fiscal agent to the Commonwealth and its instrumentalities, has hired Conway MacKenzie, Inc. ("Conway"), a U.S.-based consulting firm, to perform a liquidity analysis of the Commonwealth, assist with the implementation of measures to*

6

*improve cash management and forecasting procedures, and provide assistance to the Puerto Rico Treasury Department (the "Treasury Department" or "Treasury") in the development of short and medium-term cash flow projections. Conway has also performed a limited review of certain other Commonwealth funds and component units, and this limited review has now been expanded to include a more detailed review of such funds and units. As part of the engagement, Conway has provided liquidity projections for the remainder of the current fiscal year and the following fiscal year of the Commonwealth's cash balance in the Treasury Department's Single Account (the "Concentration Account"), in which the Treasury Department deposits and disburses amounts related to all funds managed by Treasury, including, among others, receipts from taxes and charges for services, collections made on behalf of certain component units, receipts of most Federal funds, and net receipts from new debt issuances and pension contributions and disbursements of pensions benefits for the three principal retirement systems. It is important to note that Conway's analysis was limited to funds available to the Treasury Department in its Concentration Account at GDB and did not factor other potential sources of liquidity available to the Commonwealth, such as cash in the Commonwealth's depositary accounts other than the Concentration Account (including accounts holding funds for capital projects of the Commonwealth), agency deposits at third party financial institutions and cash and other liquid assets held by GDB. Commonwealth of Puerto Rico Quarterly Report Dated May 7, 2015,* **Page 4.**
***The Commonwealth may lack sufficient resources to fund all necessary governmental programs and services as well as meet debt service obligations for fiscal year 2016***. *Commonwealth of Puerto Rico Quarterly Report Dated May 7, 2015,* ***See , Exhibit 2, Page 12.*** *(Emphasis ours).*

17. In the past, the Commonwealth would appropriate funds from different sources of the General Fund. However, the current financial situation makes this type of appropriation impossible, since it could affect the continuation of essential services afforded to the public.

*Neither the Commonwealth nor GDB may be able to honor all of their obligations as they come due nor may the Commonwealth be able to fund all necessary governmental programs and services if it does not have sufficient access to the capital markets or alternative sources of financing to satisfy its liquidity needs, or as a result of the challenges and risk factors identified herein or others not described herein. Commonwealth of Puerto Rico Quarterly Report Dated May 7, 2015.* ***See, Exhibit 2 at Pages 14-15***

*GDB serves as the principal source of short-term liquidity for the Commonwealth and its instrumentalities. GDB's liquidity has been adversely affected by, among other things, some of the same factors that have affected the Commonwealth's liquidity that are described herein, including credit-rating downgrades to non-investment grade level. Although GDB has*

7

*previously assisted the Commonwealth in satisfying its obligations, GDB is not legally required to provide such assistance and there is no assurance that it will be able to continue to provide such assistance in the future. To the extent that GDB financing is unavailable, the Commonwealth will be required to find other sources of funding in order to meet its obligations. There is no assurance that the Commonwealth will be able to access other sources of financing or funding sufficient at any one time to meet its obligations as they come due. For a more detailed discussion of GDB's liquidity, see "FISCAL CONDITION –GDB Funding and Liquidity." GDB's fiscal and financial condition depends to a large extent on the repayment of loans made to the Commonwealth and its instrumentalities. GDB may be adversely affected by the inability of the Commonwealth and certain of its instrumentalities that have loans from GDB to fully repay those loans when due. If certain of the Commonwealth's instrumentalities are unable to overcome the challenges described in the Base Commonwealth Report under "RISK FACTORS - Significant financial and fiscal challenges facing the Commonwealth's instrumentalities may adversely affect the Commonwealth's financial and fiscal condition," GDB's financial and fiscal condition may be adversely affected, its balance sheet impaired and its solvency threatened. PRHTA alone owes GDB $2.280 billion (including the VRDOs and accrued interest), which would be repaid in part from the proceeds of the proposed PRIFA bond issuance. Commonwealth of Puerto Rico Quarterly Report Dated May 7, 2015.* **See, Exhibit 2 at Pages 15-16**

18. Both the Commonwealth and GDB's liquidity are **<u>significantly strained</u>** and, absent the consummation of the PRIFA bond issuance or an alternative financing transaction, their remaining liquidity is projected to be depleted in the first quarter of fiscal year 2016, that is, within the following months.

19. In the absence of such bond issuance, an alternative financial transaction or other emergency liquidity enhancing or preservation measures, GDB is currently projected to have insufficient liquidity to meet its legal reserve requirement by the first quarter of fiscal year 2015-2016 and may be unable to support the operations and liquidity needs of the Commonwealth, its public corporations and instrumentalities and municipalities. See, *Exhibit 2.*

20. In such a scenario, the Commonwealth may also be unable to obtain intra-year short-term financing for fiscal year 2015-2016 through the issuance of Tax Revenue

Anticipation Notes ("TRANs"). The Commonwealth currently projects that **absent TRANs financing, the Commonwealth would deplete its cash resources in full during the first quarter of fiscal year 2016**, even after considering the implementation of extraordinary short term administrative measures to conserve cash. See, *Exhibit 2.*

21. As a result, the failure to consummate the proposed PRIFA bond issuance or an alternative financing **transaction would likely cause the Commonwealth, G ayB and other instrumentalities to be unable to continue funding all governmental programs and services as well as debt service obligations on a timely manner. See,** *Exhibit 2.*

22. Neither the Commonwealth nor GDB may be able to honor all of their obligations as they come due nor may the Commonwealth be able to fund all necessary governmental programs and services if it does not have sufficient access to the capital markets or alternative sources of financing to satisfy its liquidity needs, or as a result of the challenges and risk factors identified therein or others not described therein.

23. The financial projections foresee that the Commonwealth may lack sufficient resources to fund all necessary governmental programs and services as well as meet debt service obligations for fiscal year 2015-2016.

24. We emphasize that in the center of the financial obligations that the Commonwealth is struggling to comply with the Mi Salud Program. As previously stated, **the Commonwealth's healthcare costs represent a very high percentage of its budgetary expenditures, and the Commonwealth may be unable to continue to fund such healthcare costs**. The fiscal stability of the Commonwealth's health insurance program is one of the most significant budgetary challenges facing the Commonwealth,

further worsened if the availability of ACA funds is not renewed or Medicaid funds are not significantly increased.

25. The Defendant in this case is the Secretary of Health, in her official capacity, in the diligent discharge of her duties she included in her request for Budget for the fiscal year 2014-2015 the necessary funds for the quarterly payments in compliance with this Honorable Court's injunction as well as in compliance with Federal law. The budgetary request was submitted, after the appropriate fiscal evaluation by the OMB, to the Commonwealth's Legislature for approval. The appropriated budget for the Department of Health approved by the Commonwealth's Legislature did not include funds for the totality of the monies projected to cover the quarterly payments. Law 78-2014 created a special fund for these payments that was limited to $22 million; these funds were not sufficient and have already been depleted for the payments of the second, third and part of the fourth quarter of 2014. The fourth quarter of 2014 payment required the use of funds from other sources. Absent the necessary appropriations for these payments, the Secretary of Health is obligated to request additional funds from the OMB, as in fact she did. Currently the OMB has not been able to identify available funds in light of the grim fiscal outlook faced by the Commonwealth.

26. Defendant will submit a request to include funds for the WAP payments as part of its budgetary proposal for fiscal year 2015-16 for approval before the Commonwealth's Legislature. All Commonwealth efforts are subject to the estimated income and collection of funds; and the constitutional requirements of prioritization

due to the current fiscal situation. Until such time, the Commonwealth is currently attempting to identify budget allocations within this fiscal year's budget.  Nonetheless, this is also subject to approval before the Legislature.

27. In general, the WAP formula includes the PPS base rate, which has already been accepted by the Court, adjusted by the MEI (Medicaid Economic Index), the eligible visits and the MCO payments made to the Centers.  Since the origins of this case, this Honorable Court has fostered the use of real data in the formula's computation. The formula for compliance with the Court's injunction utilized estimated data in place of real data because of a previous inability of the parties to produce certifiable/verifiable information.  That is not the case any longer.  The real data used to calculate the Payment for the first quarter of 2015 has proven that the WAP payments for previous quarters could be significantly overstated.  Substituting real data in the formula resulted in a reduction of the WAP payment from $9.5 Million to $5.3 Million, which represents a 45% decrease of the quarterly payments made in the year 2014. Considering that these are disbursements of public funds and in light of the current fiscal situation of the Commonwealth, Defendant urges the Court to allow for a reconciliation of previous payments using real and certifiable data, where available. The Commonwealth of Puerto Rico has a constitutional responsibility to ensure that its funds are disbursed with constraints.

**WHEREFORE**, Defendant respectfully requests that this Court take notice of the above stated, that it reconsiders its Order at ECF Document No. 348, that it allow for the

11

parties to make a reconciliation of the WAP payments due with the real data and that it finds that given Defendant's fiscal situation that there is an impossibility to comply at this time with this Court's Order.

Respectfully submitted, in San Juan, Puerto Rico, this 15th day of May 2015.

## NOTICE OF ELECTRONIC FILING

**I HEREBY CERTIFY**, that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will notify copy to the attorneys of record.

**CÉSAR MIRANDA RODRÍGUEZ**
Secretary of Justice

**MARTA ELISA GONZALEZ Y.**
Deputy Secretary of Justice
For Litigation

*S/ BEATRIZ ANNEXY GUEVARA*
**BEATRIZ ANNEXY GUEVARA**
USDC-PR # 217505
Legal Counsel
PR Department of Justice
P.O. Box 9020192
San Juan, PR 00902-0192
Tel 787 721-7700, ext. 2105
Fax. (787) 722-4440
bannexy@justicia.pr.gov

*s/ Arlene R. Pérez Borrero*
**ARLENE R. PÉREZ BORRERO**
USDC-PR 218207
PÉREZ BORRERO & ASSOCIATES LAW OFFICES, PSC
P.O. Box 1866
Luquillo, Puerto Rico 00773
Tel. (787)316-1183
arperezbo@hotmail.com

## NOTIFICATION

On this date, the signatory to this motion has sent it via email to all attorneys of record.